**STATE of Minnesota, Respondent,**

v.

**Tommy HAWKINS, Appellant.**

**No. 49395.**

Supreme Court of Minnesota.

April 13, 1979.

Ragnhild Anne Westby, St. Paul, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, William B. Randall, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

ROGOSHESKE, Justice.

Defendant was found guilty on each count of a three-count complaint charging him with possession of heroin with intent to sell, possession of heroin, and possession of cocaine, and was sentenced on the first and third counts to concurrent terms of 15 years and 5 years in prison. The controlled substances involved were seized by police during a warranted search of defendant's residence, which he shared with his girl friend. Defendant's basic contention on appeal is that the affidavit in support of the application for the search warrant failed to establish probable cause. We agree with the district court that the affidavit, although poorly drawn, was adequate to support the

issuance of the warrant, and accordingly we affirm.

The affidavit, which we reproduce below in relevant part,[1] refers initially to hearsay information provided by an unidentified police informer. A reading of the entire affidavit, however, makes it clear to us that we need not discuss whether the so-called *Aguilar* test[2] was satisfied, since the affidavit, when viewed in a realistic, common-sense fashion, contains information indicating that officers of the narcotics division had made observations in themselves sufficient to demonstrate the existence of probable cause to believe that narcotics would be found in a search of the residence. See, *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). In other words, it was not necessary to resort to hearsay information to justify the issuance of the warrant.[3]

Specifically, the affidavit, although poorly worded, indicates (a) that the officers had participated in two "controlled purchases" within the previous 2-week period (one of the two being within the previous 72-hour period); (b) that such participation involved providing an unidentified informant with money and then observing his movements and those of his contact; (c)

that the unidentified informant went to the residence of a man named Cain, who in turn went to defendant's residence; (d) that Cain emerged from defendant's residence after only a minute inside; and (e) that Cain then gave heroin to the unidentified informant, who gave it to the officers. From our reading of the records in a number of drug cases which have come before this court, it is apparent that the term "controlled purchase" is a term of art which has a specific meaning in law enforcement circles, and the magistrate presumably was aware of the meaning of this term. A "controlled purchase" involves providing money to a buyer, who is searched before and after making contact with the seller. It also involves police surveillance of as much of the transaction between the buyer and seller as possible. It is true that what the police saw during the "controlled purchase" was not enough to establish beyond a reasonable doubt that the heroin which the informant got from Cain came from within the residence, since the police were unable to search Cain before he went into the residence. Their observations, however, were sufficient to justify concluding that probably the heroin came from the residence. Stated differently, the reasonable inference which the magistrate was justi-

1. "Affiant is a police officer employed by the city of St. Paul, Department of Police for the past 12 years and is currently a Sergeant assigned to the Narcotics Division. The affiant has in the course of his assigned duties investigated narcotic and drug offenses.

"Within the last month information has been received by this unit that drug sales, namely heroin, have been taking place at 401 Virginia. This information has come from a confidential reliable informant and also police officers working a short distance from this address. It was determined that the renter of this apartment is a Beatrice Martin.

"Within the past two weeks two separate controlled purchases of heroin were made by the use of a informant and a unwitting informant at this address. During the last 72 hours a informant was supplied with a sum of money from Narcotics Unit with which to make a controlled purchase of heroin from the unwitting informant. The informant was then followed to 1030 Dayton Avenue where we observed the informant enter this residence and leave minutes later in the company of one Francis Cain. Francis Cain is known to this Unit to be involved in the sale of controlled

substances. Cain, the unwitting informant, was then followed to 401 Virginia where he was observed to enter this apartment, stay for a minute and leave. The purchase of heroin made by Cain from this apartment was then turned over to informant. In addition to the controlled buys made by Francis Cain at 401 Virginia he has been observed on other occasions to visit this address, stay for a minute and leave."

2. See, *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). This test is discussed most recently in our opinion in *State v. Siegfried*, 274 N.W.2d 113 (Minn.1978).

3. As stated in Moylan, *Hearsay and Probable Cause*, 25 Mercer L.Rev. 741, 778, "When [independent police] observations are sufficient in themselves to demonstrate probable cause, the final problem is thereby solved and all information both from and about the informant becomes a redundancy; probable cause is established without necessary resort to the hearsay." Accord, LaFave, *Probable Cause from Informants*, 1977 U.Ill.L.F. 1, 63.

fied in drawing from the information provided in the affidavit was that Cain got the heroin from someone at the residence and that heroin was being kept there. Under the circumstances, we believe that the affidavit contained sufficient information obtained by independent police observation to establish probable cause.

Affirmed.