STATE of Minnesota, Respondent,

v.

Bradley Keith YARITZ, Appellant.

No. 49311.

Supreme Court of Minnesota.

Oct. 12, 1979.

**14**

William M. Mahlum and Steven N. Hunt, St. Paul, for appellant.

Warren Spannaus, Atty. Gen., Tom Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

SCOTT, Justice.

Defendant was found guilty of possession of marijuana in excess of 1.5 ounces and possession of marijuana with intent to distribute, and was placed on probation by the trial court. Defendant contends on this direct appeal that the affidavit in support of the application for the search warrant which was used in this case failed to establish probable cause to search his residence and that the 6-day delay in executing the warrant constituted a violation of his statutory rights under Minn.St. 626.11 and his constitutional rights under the Fourth Amendment. We hold that the affidavit was adequate and that the 6-day delay in executing the warrant violated neither the statute nor the constitution, and we accordingly affirm.

1. The affidavit, which we reproduce below in relevant part,[1] refers to hearsay information provided by an unidentified police informant, but a reading of the entire affidavit makes it clear to us that we need not discuss this case in terms of whether the so-called *Aguilar*-test[2] was satisfied. This is because—as we held in

---

1. "Affiant is a police officer employed by the City of St. Paul, department of police, for the past 8 years, and is currently a sergeant assigned to the Narcotics Unit. Affiant has, in the course of his assigned duties, had occasion to investigate narcotics and drug offenses.

"The name of Bradley Yaritz first came to the attention of the narcotics unit in January of 1977. At this time Yaritz was named by an arrested juvenile as a supplier of phencyclidine and marijuana.

"Within the last month, the affiant received information that Bradley Yaritz is still dealing in controlled substance, and that Yaritz is living at 257 Maria in St. Paul. The informant also stated that Yaritz meets people at prearranged locations for drug deals, and that it would be possible to make a controlled purchase of controlled substance from Bradley Yaritz.

"On 2 *separate occasions within the past* month the affiant has met with the informant, and made controlled purchases from Bradley Yaritz. On both occasions the controlled purchases were handled in the following manner: The informant made contact with Yaritz and made arrangements to purchase a quantity of controlled substance at a prearranged location.

The affiant then searched the informant for controlled substance, and gave the informant a sum of money to make the controlled purchase. At this same time, a surveillance team observed Yaritz leave 257 Maria and go directly to the location mentioned by the informant. The affiant then followed the informant to the same location, and observed the informant meet with Yaritz. After the informant met with Yaritz, the informant turned over to the affiant a quantity of controlled substance. This last purchase took place within the past 72 hours.

"Surveillance has also indicated that Yaritz uses two different vehicles to meet people for possible drug transactions. Several of these people that Yaritz has met are known by the Narcotics Unit to have been involved in narcotics violations in the past. These vehicles are a 1970 Chevrolet, lic. No. ABT669 and a 1973 Honda motorcycle, lic. No. 273368."

2. See, *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). This test is discussed recently in our opinion in *State v. Siegfried*, 274 N.W.2d 113 (Minn.1978).

the recent case of *State v. Hawkins,* 278 N.W.2d 750 (Minn.1979), in which the affidavit was substantially similar in content with this affidavit—the affidavit contains sufficient information obtained by independent police observation to establish probable cause.

While the *Hawkins* case disposes of defendant's claim concerning the reliability of the information contained in the affidavit, it does not dispose of the related contention that, even if the information was reliable, it failed to establish probable cause to believe that marijuana would be found in defendant's residence. Relevant to this related contention is our recent decision in *Rosillo v. State,* 278 N.W.2d 747, 748 (Minn. 1979), where we stated in relevant part as follows:

"[Defendant's contention is] that the affidavit in support of the warrant application did not demonstrate the existence of probable cause for believing that fruits of the crime would be found in the house.

"Although the affidavit did not contain any averment of firsthand information that fruits of the crime would be found at defendant's residence, the Fourth Amendment does not make such information essential. All that is required is that the affidavit, interpreted in a commonsense and realistic manner, contain information which would warrant a person of reasonable caution to believe that the articles sought are located at the place to be searched. *United State v. Rahn,* 511 F.2d 290 (10 Cir. 1975). See, also, *State v. Wiley,* 295 Minn. 411, 417, 205 N.W.2d 667, 673 (1973), where in upholding a warranted search for identification items we stated that '[i]n passing on an application for a warrant, the magistrate is not required to ignore such familiar facts of normal life as the habit of most people to have items of identification at their residence.'

"In this case the affidavit contained facts justifying the conclusion that defendant had participated in the burglary and that he still had some of the money in his possession. In view of the large number of coins taken in the burglary, over $500 worth, it is unlikely that defendant could have carried on his person all of his remaining share. Since the normal place that defendant would be expected to keep those coins which he could not carry would be at his residence, the search was properly authorized."

See, also, discussion of the issue at 1 LaFave, Search and Seizure, § 3.7, pp. 706–709.

In this case it is significant that the affidavit indicates that when the two controlled sales were arranged by telephone, defendant's house was under surveillance and defendant was observed going straight from his house to the place where the sale took place. Professor LaFave suggests in his treatise that this is the type of additional fact which should be deemed sufficient, in a sale-of-contraband case where the sale has not taken place at the seller's home, to support an inference that the seller stores the contraband on his premises. Id. at 707. In support of this LaFave cites *Commonwealth v. Vynorius,* 369 Mass. 17, 336 N.E.2d 898 (1975), a case which is closely in point. There the court upheld, as adequate to support a warrant to search a seller's house, a statement in the affidavit that before making the sale on the street the seller first went to his residence and then returned 20 minutes later with the marijuana.

In summary we believe the affidavit did contain information on which the magistrate was entitled to rely and we also believe that the information was sufficient to reasonably support an inference that the marijuana would be found in a search of defendant's house.

2. The only other issue raised by defendant relates to the delay in executing the warrant. A claim such as this requires a two-part analysis: first, whether the statutes dealing with delays in executing a search warrant were violated and, if so, what the consequences of the violation are, and second, whether, because of the delay, probable cause to search no longer existed at the time the warrant was executed.

**16**

(a) Minn.St. 626.11, dealing with the issuance of search warrants, provides as follows:

"If the court or justice of the peace is thereupon satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence, he must issue a search warrant, signed by him with his name of office, to a peace officer in his county, commanding him *forthwith* to search the person or place named, for the property or things specified, and to retain such property or things in his custody subject to order of the court or justice of the peace issuing the warrant." (Italics supplied.)

Minn.St. 626.15, dealing with execution of search warrants, provides as follows:

"A search warrant must be executed and returned to the court or justice of the peace who issued it within ten days after its date; after the expiration of this time the warrant, unless executed, is void."

The only Minnesota case dealing with this issue is *State v. Van Wert*, 294 Minn. 464, 199 N.W.2d 514 (1972), but that case is of little help, the opinion simply stating that the delay of 27 hours in executing the search warrant authorizing a search "forthwith" was not unreasonable.

According to Professor LaFave, statutory requirements that execution of search warrants be "forthwith" have been interpreted liberally:

" * * * Delay has been upheld as reasonable where, for example, it occurred because of a desire to protect an informant or to arrest accomplices or because of a lack of personnel. Moreover, defendants relying upon these provisions have often been met with the proposition that they may prevail only upon a showing that they were 'prejudiced' by the delay, such as that evidence found incident to the search and now tendered against them would not have been found (because not then on the premises searched) if the warrant had been executed more promptly." 2 LaFave, Search and Seizure, § 4.7(a), p. 114.

Under the approach that most courts have taken, it would appear that a delay of the sort involved here—which was attributable in significant part to the executing officer's desire to be sure that defendant was home when he executed the warrant—should not be deemed either unreasonable or prejudicial. Beyond this, one must remember that the requirement of execution "forthwith" and in any event within 10 days after issuance is a statutory requirement. Even if we were to conclude that the statute technically had been violated, we would not be obliged to conclude that suppression of the fruits of the search was necessary. In this regard, see, *State v. Lien*, 265 N.W.2d 833 (Minn.1978) (refusing to suppress evidence in a case in which the nighttime execution of the search warrant was a statutory, not a constitutional, violation).

(b) A related but more important issue is whether the delay in the execution of the warrant constituted a constitutional violation. As Professor LaFave points out, " * * * an unconstitutional delay may have occurred notwithstanding execution of the warrant within the time set by rule or statute." 2 LaFave, Search and Seizure, § 4.7(a), p. 114. Whether a delay in executing a search warrant is unconstitutional depends on whether the probable cause recited in the affidavit still exists at the time of execution of the warrant—that is, whether it is still likely that the items sought will be found in the place to be searched. As stated by Judge Moylan in *Andresen v. State*, 24 Md.App. 128, 172, 331 A.2d 78, 106 (1975), aff'd. sub nom. *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), there are a number of factors which are involved:

"The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched

(mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed."

Professor LaFave in his treatise takes the position that the continuity of the crime is the most important factor in determining the staleness issue. 1 LaFave, Search and Seizure, § 3.7(a), p. 686.

█ While it is true that a drug sale may be a single-occurrence crime, the affidavit here indicates that defendant was in the business of selling drugs and that he had been doing it on a continuing basis. Because of this, we believe it is reasonable to conclude that the probable cause which obtained on April 14, when the warrant was issued, continued to exist on April 20, when the warrant was executed.

Affirmed.