**STATE of Minnesota, Respondent,**

v.

**David GUTBERLET, Appellant.**

**Nos. C7–82–503, C9–82–650 and CX–82–1449.**

Supreme Court of Minnesota.

April 6, 1984.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, and Jerry Anderson, Sp. Asst. Attys. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Rich Osborne, Asst. County Atty., Michael Richardson, Asst. County Atty., Beverly J. Wolfe, Minneapolis, Michael Lynch, Kandiyohi County Atty., Willmar, for respondent.

AMDAHL, Chief Justice.

On our own motion we have consolidated separate appeals by defendant from three judgments of conviction arising from a series of robberies committed by defendant in 1981. We affirm all three judgments.

At 6:30 a.m. on June 27, 1981, defendant committed an armed robbery at the Poppin Fresh Pie Shoppe at 611 West 98th Street in Bloomington. He was caught by police moments after the robbery and he was positively identified by the victim in an on-the-scene one-person showup minutes later.

Early on October 14, 1981, while free on bail, defendant and a companion committed an armed drug robbery at the Rice Memorial Hospital in Willmar.

At 8:40 p.m. on October 19, 1981, defendant committed an armed drug robbery at Snyder Drug in Hopkins.

Minneapolis narcotics agents learned that some drugs of the kind taken in the October 19 robbery were being sold from the upper part of a South Minneapolis duplex. On the afternoon of October 28, 1981, they executed a search warrant at that address, which was the residence of Sherry Cooke and Scott McClimek. While the officers were executing the warrant, another officer who was keeping watch outside saw defendant and his girl friend, Holly Anderson, drive up in her car. Defendant got out of the car and approached the building, leaving Anderson behind.

Two plain clothes officers, having received this information by police radio, met defendant in the common area of the duplex as he was ringing the door bell for the upstairs. When the officers identified

themselves as officers and told defendant that they were executing a search warrant upstairs, defendant immediately reached for his jacket pocket. One of the officers grabbed defendant's hand and reached in and pulled out a large transparent bag of Percodan tablets. Defendant was then placed under arrest and taken upstairs. A search of defendant's person resulted in the discovery of $317 in cash.

Two officers then went outside, identified themselves to Holly Anderson, and asked her to get out of the car. After she got out they saw a Percodan tablet in open view on the seat where she had been sitting. Police found $900 in cash in a search of her person. A subsequent warranted search of the car resulted in the discovery, in the locked trunk, of a large bottle of Percodan tablets and eight bottles of Dilaudid tablets.

Defendant and McClimek appeared in an eight-person lineup, first without masks, then with masks. The victim of the October 14 robbery at Rice Memorial Hospital in Willmar positively identified defendant during her viewing of the first part of the lineup. The pharmacist at the Snyder Drug robbed on October 19 positively identified defendant during his viewing of the second part of the lineup.

A warranted police search of the apartment that defendant and Holly Anderson shared in Hopkins, just one block from the drugstore, resulted in the discovery of a note stating, "David, here's $110 and I will call you in the a.m. on the rest. Still ain't got nothing from the other guy. Sorry I missed you, Scott. $150 left to give you."

1. *Robbery of June 27, 1981.* Defendant was tried first for the June 27, 1981, restaurant robbery. The trial court sentenced him to 90 months in prison, which, given defendant's 1977 conviction of aggravated robbery, was the presumptive sentence pursuant to Minn.Stat. § 609.11 (1982) and Minnesota Sentencing Guidelines and Commentary, II.E. (1982). On appeal (C7–82–503) defendant contends (a) that his conviction should be reversed outright on the ground that the evidence identifying him as the robber was legally insufficient or (b) that he should be given a new trial because the trial court committed prejudicial error in denying defense motions to (i) suppress eyewitness identification evidence, (ii) suppress inculpatory statements defendant made to the police, and (iii) preclude the prosecutor from using the prior robbery conviction to impeach defendant's credibility when he testified.

(a) Defendant's claim that the evidence identifying him as the robber was legally insufficient is meritless. Defendant was caught by police as he was fleeing the scene with the proceeds of the robbery in his possession, he was positively identified by the victim both on-the-scene and at trial, and he made incriminating statements to the police.

(b)(i) Defendant's first claim of trial error is that the one-person on-the-scene showup was impermissibly suggestive and that the victim's identification of him was the result of that suggestiveness and was unreliable. We have had a number of cases in which we have upheld the refusal of the trial court to suppress eyewitness identification testimony following a one-person showup conducted shortly after the crime. See, e.g., *State v. Lloyd,* 310 N.W.2d 463 (Minn.1981); *State v. Hardy,* 303 N.W.2d 57 (Minn.1981); *Jackson v. State,* 269 N.W.2d 23 (Minn.1978). *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), was also a one-person showup case. The analysis which must be used in this kind of case is the analysis used in *Biggers* and in *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). We must consider all the relevant factors in determining if there was a "very substantial likelihood of irreparable misidentification." Doing that, we conclude that the trial court properly refused to suppress the identification testimony.

(ii) Defendant's second claim of trial error relates to the trial court's denial of his motion to suppress the inculpatory statements defendant made to the police when he was interrogated on June 29. The

detective who questioned defendant testified that he gave defendant a standard *Miranda* warning and that defendant said he understood his rights and would talk. Defendant claimed that he requested an attorney but that the detective simply said that one would be assigned to him and then proceeded with the questioning. We believe that the district court was free to credit the detective's testimony and discredit defendant's testimony. That being so, the court properly denied defendant's motion to suppress.

■ (iii) Defendant's final claim of trial error relates to the trial court's denial of his motion to preclude the prosecutor from using his 1977 conviction to impeach his credibility when he testified. The issue of use of prior convictions to impeach a defendant is an issue which we have decided numerous times in the last several years. The applicable rule is Minn.R.Evid. 609. Relevant cases include *State v. Morrison*, 310 N.W.2d 135 (Minn.1981); *State v. Bellcourt*, 305 N.W.2d 340 (Minn.1981); *State v. Bettin*, 295 N.W.2d 542 (Minn. 1980); *State v. Brouillette*, 286 N.W.2d 702 (Minn.1979); *State v. Jones*, 271 N.W.2d 534 (Minn.1978). We hold that the trial court did not err in ruling as it did.

2. *Robbery of October 19, 1981.* Defendant was tried next for the robbery of the Snyder Drug in Hopkins, which occurred on October 19, 1981. The trial court sentenced defendant to 90 months in prison and ordered the term to run consecutively to the previously imposed 90-month sentence in connection with the June 27 robbery. On appeal (C9–82–650) defendant contends (a) that his conviction should be reversed outright on the ground that the evidence identifying him as the robber was legally insufficient or (b) that his conviction should be reversed and a new trial granted because the trial court prejudicially erred in (i) denying his motion to suppress evidence on fourth amendment grounds and (ii) denying a motion to preclude the prosecutor from using his prior robbery convictions (the 1977 one and the one based on

the June 27 robbery) to impeach his credibility when he testified.

■ (a) Defendant's first contention, that his conviction should be reversed outright, is meritless. The pharmacist and the manager of the drugstore both identified defendant at the lineup, the pharmacist positively. The pharmacist also positiviely identified defendant in court (the manager was not asked). Defendant and his girlfriend lived just a block from the drugstore, and the Legion Club, where he claimed he was at the time, was just 3 blocks from the drugstore. Defendant was obviously connected to McClimek, whose record book contained a notation relating to an unusual drug taken in the robbery and whose gun was identified by the pharmacist. Further, when he was arrested defendant had actual possession of drugs identical to those taken in the robbery and constructive possession of other drugs also identical to those taken in the robbery, including some unusual strength Dilaudid tablets. Defendant also was wearing a tan jacket like that worn by the robber.

(b)(i) Defendant makes a number of arguments in support of his claim that the trial court erred in denying his motion to suppress on forth amendment grounds.

■ First, he argues that his arrest was the product of an illegal search and that everything that followed must be suppressed. Cases dealing with the limits of police investigation of third parties who are present at the scene of a lawful arrest or search include *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *United States v. Clay*, 640 F.2d 157 (8th Cir.1981); *State v. Brazil*, 269 N.W.2d 15 (Minn.1978); *State v. Clark*, 312 Minn. 44, 250 N.W.2d 199 (1977). *See also* 2 W. LaFave, *Search and Seizure* § 4.9 (1978 and 1984 Supp.). It is clear from the cases—particularly *Clay* and *Brazil*—that if the trial court properly credited the testimony of the police officers at the omnibus hearing, then the frisk of defendant and the subsequent arrest of him were proper. We do not agree with defendant's characterization of the testimony of the officers

as inconsistent and contradictory, and we therefore conclude that the trial court was justified in crediting their testimony.

■ Defendant next argues that even if his arrest was legal, the subsequent police action of ordering Holly Anderson out of the car was not. We believe that the action was legal, particularly since the police were going to impound the car. In any event, defendant clearly has no standing to object to that particular police action because only Anderson's interests were affected, not defendant's.

■ Defendant also argues that the affidavit accompanying the applications for warrants to search the car and his residence failed to establish probable cause to believe that drugs or other evidence would be found in those places. Police probably could have searched the car even without a warrant. *State v. Schinzing*, 342 N.W.2d 105 (Minn.1983). The police had lawfully found a large quantity of Percodan in a bag taken from defendant's pocket and they had found another Percodan tablet in open view on the front seat of the car which defendant and Anderson had been driving. Under *Schinzing* these facts justified a search of the entire car, including the trunk. The fact that the officers towed the car first would not prevent them from searching the car without a warrant.

Given the information that the police had, the police officer who prepared the affidavit in support of the search of the residence could have made a better case for the search. Basically, the affidavit just stated that defendant had been identified as the robber and that police believed that drugs would be found in the residence. There are cases indicating that this sort of an affidavit is inadequate to justify a search of a residence for drugs. *See State v. Doyle*, 336 N.W.2d 247 (Minn.1983); *State v. Yaritz*, 287 N.W.2d 13 (Minn.1979); 1 W. LaFave, *Search and Seizure* § 3.7(d) (1978 and 1984 Supp.). The defendant's brief is not helpful on this issue and the state's brief does not even address it. Rather than decide the issue, we simply hold that even if there was error in admitting the evidence it was not prejudicial. The only evidence seized from the residence was the note from one "Scott" to defendant. This evidence was cumulative, defendant already having been connected to Scott McClimek by other evidence.

■ (ii) Defendant's other claim of trial error relates to the trial court's denial of his motion to preclude the state from using his prior convictions to impeach his credibility when he testified. Our discussion in part (1)(b)(iii) of this opinion applies equally here.

3. *Robbery of October 14, 1981.* Defendant's last trial was for the October 14, 1981, robbery at Rice Memorial Hospital in Willmar. He was found guilty of aggravated robbery, kidnapping and assault in the second degree, Minn.Stat. §§ 609.245, 609.-25, subd. 1(2), and 609.222 (1982). The trial court sentenced him to 90 months in prison and ordered the term to run consecutively to the previously-imposed sentences. On appeal (CX–82–1449) defendant contends (a) that his conviction should be reversed outright on the ground that the evidence identifying him as the perpetrator of the offenses was legally insufficient or (b) that he should be given a new trial because the trial court committed prejudicial error in admitting (i) lineup identification evidence and (ii) *Spreigl* evidence challenged by defense counsel, specifically, evidence that defendant had committed and had been convicted of the June 27 Poppin Fresh robbery and the October 19 Snyder Drug robbery.

■ (a) Defendant's contention that the evidence of his guilt was legally insufficient is meritless. The victim, a nurse, was an intelligent, perceptive witness who had a good look at the perpetrators and positively identified defendant as one of them. Additionally, the conviction is supported by the *Spreigl* evidence and evidence that defendant made incriminating admissions to a fellow jail detainee.

■ (b)(i) Defendant makes two claims in support of his contention that he was

denied a fair trial. First, he contends that the trial court erred in denying his motion to suppress the lineup identification testimony on the ground that the lineup was conducted in violation of defendant's right to counsel. Defendant had not yet been formally charged for the robbery when the lineup was held. He agrees that normally the right to counsel at a lineup applies only after a defendant has been formally charged. *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). However, he argues that since he had been formally charged and in fact had retained counsel in connection with a different offense, he should have been given a chance to contact that counsel before the lineup was held. We need not decide the issue raised by defendant. The transcript of the omnibus hearing reveals that defendant testified at the hearing that he asked for counsel at the lineup (a fact disputed by the state's witness), that the officer conducting the lineup said that a public defender would be there to represent him, and that defendant acquiesced in this attorney's representing his interests. Our examination of the record satisfies us that this attorney in fact represented defendant's interests by observing the lineup and that he apparently was satisfied that it was fairly conducted. Even if we were to address the other issue and conclude that defendant's right to counsel was violated, we would affirm because any violation of defendant's right to counsel clearly would not have kept out the victim's in-court identification testimony in this case. *State v. Cobb*, 279 N.W.2d 832 (Minn.1979). That is, even if there was error, the error related only to the admission of the lineup identification evidence and that error was not prejudicial, given the overwhelming nature of the other evidence that was legally admitted, which included the victim's in-court identification testimony, the *Spreigl* evidence and defendant's incriminating statements to the jail detainee.

 (ii) Defendant's other contention is that the trial court erred in admitting the *Spreigl* evidence. We hold that the trial court did not abuse its discretion in admitting the evidence. Numerous cases support this conclusion, including the recent case of *State v. Coles*, 328 N.W.2d 157 (Minn.1983) (upholding admission of evidence of prior robbery in prosecution of a defendant for a similar robbery). The evidence of defendant's participation in the other robberies was clear and convincing, there was a sufficient similarity among the offenses in terms of time, place or modus operandi, and the probative value of the evidence outweighed its potential for creating unfair prejudice.

Affirmed.