**STATE of Minnesota, Respondent,**

v.

**Sarah AGUILAR, Appellant.**

**No. C5–83–204.**

Supreme Court of Minnesota.

Aug. 3, 1984.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

AMDAHL, Chief Justice.

Defendant was found guilty by a district court jury of a charge of possession of heroin. The trial court sentenced defendant to 16 months in prison, stayed execution of the sentence and placed defendant on probation, with the first 90 days of

probation to be served in jail. On this appeal, defendant contends (1) that her conviction should be reversed outright because the heroin was seized in a warranted search based on an affidavit which failed to establish probable cause, or (2) that she should be given a new trial because security procedures used at her trial created an atmosphere inconsistent with the presumption of innocence. We affirm.

■ 1. Defendant's first contention is that the affidavit in support of the application for the search warrant failed to establish probable cause. The affidavit, which we reproduce below,[1] was not based primarily on hearsay but on independent police observation of a so-called "controlled purchase." Of a number of relevant cases, the one most closely in point is *State v. Hawkins*, 278 N.W.2d 750 (Minn.1979). There we held that a similarly-worded affidavit contained sufficient information based on independent police observation to establish probable cause. 278 N.W.2d at 751. We believe that the affidavit in this case, although poorly worded, as was the affidavit in *Hawkins*, contained sufficient information to establish probable cause.

■ 2. Defendant's other contention is that security procedures ordered by the trial court and carried out by police created an atmosphere that was prejudicial to defendant.

While the trial was in progress, the trial court received information from the St. Paul Police Department that there was a possibility that someone might come into the courtroom with a gun. Without consulting with either counsel, the court authorized the police to use metal detectors and to frisk people entering the courtroom. When defense counsel saw the officers checking people entering the courtroom during a recess, he complained to the court and the court explained why the officers were there. A short time later, when the trial was still in recess, defense counsel related that he had just seen defendant and her husband enter the courtroom and that the police, in full view of the jurors, had made defendant open her purse and remove

1. Affiant is a police officer employed by the City of St. Paul for the past 13½ yrs and is currently assigned as a Sergeant to the Narcotics Unit. Affiant has in the course of his assigned duties, had occasion to investigate narcotic and drugs offenses.

Affiant has had knowledge that the occupants of 1628 Timberlake G down an Sarah and Manuel Aguilar have been dealing in heroin in the past and also to date. On April 1, 1982 a warrant was drawn for their address and served on that date. This was done on information received by this division and also surveillance on another individual that went to 1628 Timberlake G and bought heroin from the above two individuals. Since this time this division has also received information for DEA agent Tom Skala that they have an ongoing investigation on the Aguilars.

Within the past 48 hrs this agent has met with a CRI with the intent purpose of making a buy from the Aguilars. The CRI was observed to meet with an unwitting who was given a quantity of money and the unwitting was followed to 1628 Timberlake G. He entered the residence and a short time later the unwitting was observed to come out to a car and then followed to a place where he met with the CRI. The CRI was given a quantity of suspected controlled substance which was later given to this agent. This agent field tested this suspected substance with positive results. Based on the previous warrant and

information on the Aguilars and the current information from the DEA agent Tom Skala, and the controlled buy within the past 48 hrs from 1628 Timberlake G. We respectfully request a warrant for 1628 Timberlake G down, the occupants Manuel and Sarah Aguilar, and all other occupants, and the vehicles they use a Dodge BZD 900, and a pickup truck belonging to Manuel Aguilar.

The CRI mention above has been given information in the past that has been true, and has resulted in the arrest and conviction of persons for narcotics violation. It is requested that the name of the CRI remain confidential, as the affiant believes if the name were made known, the CRI would be in great danger. Affiant being guided by experience in execution of search warrants in the past has found on almost all occasions drugs and persons in the possession of drugs that were not specifically mentioned in the affidavit. It is also requested that this warrant be extended to include all persons on the premise of 1628 Timberlake G down.

In executing narcotic warrants, the affiant has found on most occasions, weapons and guns in possession of persons that are used by these persons in the trafficking of controlled substance. For this reason the affiant has included weapons and guns on this warrant.

her shoes and had frisked her. Defense counsel stated that he felt that this was prejudicial and that he did not think the damage could be corrected by a cautionary instruction. When the trial resumed, the court instructed the jury as follows:

THE COURT: Ladies and Gentlemen of the Jury. You may have noted that there have been certain security precautions being taken outside of the courtroom. You are informed those security precautions are being taken at the court's direction and that based on these security precautions, you are not to let that have any effect whatsoever on your doing your job as finders of fact in this case. These security precautions, as I said, are being taken at the court's direction.

After the lunch hour, defense counsel moved for a mistrial, arguing that the cautionary instruction had not cured the error. The prosecutor opposed this, arguing, among other things, that the instruction was adequate and adding that "As a matter of fact, one of the jurors, himself, was searched prior to entering the courtroom and I myself saw that occur." The court denied the motion for a mistrial.

On the general issue of courthouse and courtroom searches, 3 W. LaFave etc. *Search and Seizure* § 10.7(a) (1978). We are not concerned in this case with the fourth amendment validity of such searches or with the admissibility of evidence discovered in such searches. Rather, we are concerned with whether the use of the procedures in this case prevented defendant from receiving a fair trial. No general rule can be stated that will be of meaningful help in deciding whether a particular defendant has been prejudiced by the use of special security procedures such as metal detectors and frisks of people entering the courtroom. As in the case of physical restraint of a defendant, a subject which we have addressed in a number of cases, *e.g.*, *State v. Stewart*, 276 N.W.2d 51 (Minn. 1979), the trial court should take a particular course of action only if it is reasonably necessary and should do everything possible to minimize the danger of prejudice and avoid creating an atmosphere inconsistent with the presumption of innocence. Just as a defendant should not be required to wear jail clothes or other physical indicia of guilt, he should not be tried in a courtroom in which the atmosphere is indicative of guilt or inconsistent with the presumption of innocence. The trial court should consult with counsel about what steps are reasonable and about what can be done to minimize prejudice. In this case, if the trial court had consulted with counsel, the court probably still would have instructed the police to screen people entering the courtroom, but defense counsel would have been aware of the procedures beforehand and could have insured that any searching of defendant take place outside the presence of the jury. Nonetheless, we do not believe that defendant was prejudiced by what happened. The fact that even jurors were searched minimized the risk that the jurors would draw an adverse inference from seeing defendant searched. The court also gave a cautionary instruction and there is no reason to believe that the jury disregarded that instruction. Finally, the evidence of defendant's guilt was strong.

Affirmed.