**STATE of Minnesota, Respondent,**

v.

**Robert Martin CAVEGN, Appellant.**

**No. CX–83–988.**

Supreme Court of Minnesota.

Oct. 26, 1984.

Earl P. Gray, Woodbury, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

TODD, Justice.

After waiving his right to a jury trial, defendant was found guilty by the trial court of possession of marijuana in excess of 1.5 ounces. He was sentenced by the court to 1 year and 1 day in prison, with execution stayed on condition that he serve 5 years probation, the first 8 months of this in the workhouse (execution of the workhouse term being stayed pending this appeal). On appeal, defendant claims, as he did in the trial court, that the affidavit in support of the application for the search warrant failed to establish probable cause. We affirm.

On September 17, 1982, Sergeant Singer of the St. Paul Police Department applied for and obtained, from a judge of the municipal court, a warrant authorizing the search of "the apartment in the northeast end of the upper portion of the building on the southwest corner of Kent and Lafond, (629 Kent), and the person of Robert Martin Cavegn." The affidavit and warrant as typed used the word "north" rather than "northeast" to describe the end of the building in which defendant's apartment was located, but was changed by Sergeant Singer to "northeast" and initialed by the judge when he issued the warrant. The affidavit read, in part, as follows:

Affiant is a police officer for the City of St. Paul for over ten years and has been assigned to the narcotics unit for over three years. The affiant has while working in this capacity occasion to investigate narcotic and drug offenses.

In June of 1977 Robert Martin Cavegn was sentenced to the Comm. of Corrections for 0–5 years for Poss. of Marijuana with intent to distribute.

In May of 1979 Robert Martin Cavegn was sentenced to the Comm. of Corrections after being found guilty of Poss. of marijuana in excess of 1.5 oz. and Poss. of Lysergic acid diethylamide (LSD) for 3 years.

Within the past month Sgt. Lindberg and the affiant received information from a confidential informant (C.I.) that Robert Cavegn was selling controlled substance and that this C.I. would be able to make a controlled buy from Cavegn at his residence. Within the Past week the affiant

and Sgt. Lindberg again met with the C.I. At this time the C.I. was searched for controlled substance and after finding none supplied the C.I. with a sum of money. The C.I. was then observed to go directly to the building on the southwest corner of Kent and Lafond (629 Kent). After a short time the C.I. exited the building and went directly to a prearranged location. At this time the C.I. turned over to the affiant a amount of controlled substance which he/she stated had been purchased from Robert Cavegn. The C.I. was again searched with negative results.

This substance was later turned into the St. Paul Police Crime Lab. and found to in fact be controlled.

On the way to execute the warrant the police saw defendant at a phone at Thomas Avenue and Dale Street. They followed him as he rode his bicycle to his residence, then stopped him and, acting pursuant to the warrant, searched him. They found two baggies of marijuana in his right sock and $274 in currency. Using defendant's keys, they entered defendant's apartment, the only one that fit the description in the warrant. The search of the apartment resulted in the discovery of more marijuana, along with drug paraphernalia.

■ The affidavit was not based primarily on hearsay but on the independent police observation of a so-called "controlled purchase." In a long line of cases, the most recent one being *State v. Aguilar*, 352 N.W.2d 395 (Minn.1984), we have upheld affidavits based on such observations. The case we relied on in *Aguilar* and have most frequently cited in this regard is *State v. Hawkins*, 278 N.W.2d 750 (Minn. 1979). The affidavit in this case is stronger than that in *Hawkins* in the sense that the controlled purchase in this case was conducted "according to the book". In the

present case, the purchaser was searched before and after going into the apartment building, something which did not occur in *Hawkins* because the purchaser was a so-called "unwitting informant." It is true that the police here did not see the purchaser go into defendant's apartment, which apparently is one of several in the building. Nonetheless, we believe the magistrate was justified in concluding that the informant was being truthful when he said he bought the marijuana from defendant, particularly since the magistrate also knew 'from the affidavit that on two prior occasions defendant had been convicted of drug offenses (in 1977 for possession of marijuana with intent to distribute and in 1979 for possession of marijuana and possession of L.S.D.)[1]

■ In addition to challenging the reliability of the information in the affidavit, defendant argues that the information was stale and did not establish probable cause that marijuana would be found in the apartment. The information in the affidavit indicated that defendant was selling controlled substances and that within the past week the informant had bought marijuana from defendant at his apartment. Professor LaFave states that "absent additional facts tending to show otherwise, a one-shot type of crime, such as a single instance of possession or sale of some form of contraband, will support a finding of probable cause only for a few days at best." 1 LaFave, *Search & Seizure* § 3.7(a) at 684 (1978). However, "[t]ime lapses running into weeks have been upheld when the facts tendered to show probable cause established a large-scale continuing gambling operation, repeated sales of drugs or liquor or guns or repeated thefts or receipt of stolen property." Id. at 685–6. In *State v. Yaritz*, 287 N.W.2d 13 (Minn.1979), the issue was whether the

1. In a previous case involving this defendant, *State v. Cavegn,* 294 N.W.2d 717 (Minn.1980), *cert. denied* 449 U.S. 1017, 101 S.Ct. 580, 66 L.Ed.2d 477 (1980), we held that under *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), the reputation of a defendant is one factor that can be considered in

determining probable cause. That being so, rather obviously a defendant's prior convictions, if relevant, may be considered on the issue of probable cause. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); 1 W. LaFave, *Search and Seizure* § 3.2(d) at n. 88 (1978).

probable cause that supported the warrant when issued still existed 6 days later when the warrant was executed. In support of our conclusion that probable cause still existed when the warrant was executed, we stated, "While it is true that a drug sale may be a single-occurrence crime, the affidavit here indicates that defendant was in the business of selling drugs and that he had been doing it on a continuing basis." 287 N.W.2d at 17. Here, too, the affidavit indicated that the sale that was "observed" was probably not an isolated sale. Consequently, the information in this affidavit was no more stale than the information in *Yaritz*. We also cannot ignore the fact that in cases involving controlled purchases by informants, police often must wait a number of days before obtaining and executing a warrant if they are to avoid compromising the informant.

 Similar factors bear on deciding whether the information established probable cause that marijuana or other drugs would be found in the defendant's apartment. The issue of probable cause to believe that items will be found in a particular place was most recently decided by this court in *Novak v. State*, 349 N.W.2d 830 (Minn.1984). In *Novak*, we held that the affidavit there justified concluding that the defendant, who had sold drugs in a place other than his house, probably kept a supply of drugs in his house. That conclusion was supported, in part, by information that the defendant dealt in large quantities and by the lack of any indication that he had a separate place to keep his drugs. In addition, there was no indication that he always obtained drugs from other sources before making a sale. In our opinion and in the opinion of Professor LaFave, the "objects-place nexus" is clearer in a case such as this where there is direct information— namely, information that a sale actually occurred there—to connect the items to the place. 1 LaFave, *Search & Seizure*, § 3.7(d) at 706 (1978).

Defendant's only other contention is that the application failed completely to establish probable cause as to which apart- ment in the building was defendant's apartment. Although the affidavit was deficient in this respect, the deficiency clearly was not a serious one. Presumably Sergeant Singer got his information from the informant. In any event, the application and the warrant would have been adequate even if they had not specified which of the apartments was defendant's apartment. In *Steele v. United States*, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925), the United States Supreme Court held that a description of a place to be searched is adequate if the officers executing the warrant can with reasonable effort ascertain and identify the place intended. For a full discussion, *see* 2 LaFave, *Search & Seizure* § 4.5 (1978). Professor LaFave takes the position that a subunit of a multiple-occupancy structure may be sufficiently described by the name of the occupant. Id. at n. 34. Among the holdings supporting this, *see Thomas v. State*, 50 Md.App. 286, 437 A.2d 678 (1981).

Affirmed.