**STATE of Minnesota, Respondent,**

v.

**Jessie KING, Jr., Appellant.**

**No. A04–292.**

Court of Appeals of Minnesota.

Jan. 4, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, J. Michael Richardson, Assistant County Attorney, Minneapolis, MN, for respondent.

Bradford W. Colbert, Assistant State Public Defender, St. Paul, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge; SCHUMACHER, Judge; and MINGE, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

Appellant Jessie King, Jr. challenges his conviction of fifth-degree controlled substance crime under Minn.Stat. § 152.025, subds. 2(1), 3(b) (2002), arguing the district court erred in concluding there was probable cause supporting the search warrant and the police officers' entry into his apartment was reasonable. We affirm.

## FACTS

On June 17, 2003, Officer Kelly Kasel of the Minneapolis Police Department applied to the district court for a "knock and announce" search warrant to enter King's apartment and search for narcotics, weapons, and evidence of drug sales. In an affidavit attached to the application, Kasel stated that she had received citizen complaints that drugs were being sold from King's apartment and relayed the circumstances of a controlled buy that a confidential reliable informant working under Kasel's directions had made three days earlier. She also included the confidential reliable informant's description of the seller and the fact that the seller had provided the confidential reliable informant with the piece of paper containing two phone numbers. The search warrant was issued the same day.

At a hearing challenging the search warrant, Kasel testified to the following events regarding the controlled buy. She arranged for the confidential reliable informant to purchase controlled substances at King's apartment. Before sending the confidential reliable informant into the building to make the purchase, Kasel searched him and provided him with "buy" money. Kasel testified she then personally watched him go into the apartment building, but she did not see what occurred once the confidential reliable informant was inside the building. After the confidential reliable informant exited the building, he came directly to Kasel's location and produced .2 grams of crack cocaine.

Kasel also testified to the information she received from the confidential reliable informant after he exited the building. He told her that he "buzzed the buzzer for number 204" and he was buzzed in at the front door. He also told her that once he was inside apartment 204, he "exchanged their prerecorded buy money for the narcotics." In addition, he provided Kasel with a description of the seller and a piece of paper the seller had given him with two separate phone numbers and the name "Pokey" written on it. The confidential reliable informant also told her that the seller said that "if they ever wanted anything in the future, they could call."

Police executed the search warrant at King's apartment at 2:00 p.m. seven days after the search warrant was issued by the district court. Kasel testified that before entering the building she had the confidential reliable informant call Pokey to see if he was in the apartment and could sell additional narcotics. Kasel testified that Pokey told the confidential reliable informant he was home and available to sell narcotics.

Kasel testified that she was present when the warrant was executed and the following events occurred as the police attempted to enter King's apartment. Although she stayed behind other officers when they entered the apartment, she

could see the officers at the apartment door. She heard them knock on the door and announce, "Police, search warrant." She testified that after waiting about five to ten seconds, the officers broke the door down and entered the apartment.

Officer Roger Smith, who was the "point officer" when the police entered King's apartment, testified the search warrant was executed as follows. As the police approached King's apartment, Smith was the second officer in the formation but was the one who actually knocked on the door. Before he knocked, he could hear sounds coming from the television inside the apartment. After he knocked he heard a male voice say, "Who is it?" Smith believed it sounded as though the response came from a person within 10 to 15 feet of the door. Smith replied, "Police, search warrant" and waited for someone to answer the door. Smith did not hear any noises that sounded like someone was approaching the door. He waited "at least five to ten seconds minimum" and then decided to "ram" the apartment door in order to gain entry. When another officer attempted to ram the door, it took numerous hits in order to get the door open but "still nobody came to the door."

Once inside the apartment, Smith discovered that the door had been barricaded. King and a female were present in the apartment living room. Smith found a plastic baggie containing crack cocaine on the living room floor and crack cocaine in King's pocket. King and the female testified that the police did not knock on the door and never announced that it was the police executing a search warrant. King and the female also testified that they were strip-searched.

King was charged with fifth-degree controlled substance crime under Minn.Stat. §§ 152.025, subds. 2(1), 3(b); 609.101, subd. 3 (2002). King moved the court to suppress the drugs, arguing the search warrant lacked probable cause, the police did not comply with the knock and announce requirements when executing the warrant, and there were technical errors with the search warrant. The district court denied King's motion, finding there was probable cause supporting the search warrant, the police officers had knocked and announced their presence, and their entry did not violate King's Fourth Amendment rights. The court also found King and the female had not been strip-searched, as they claimed. A trial on stipulated facts was held before the district court. King was found guilty of fifth-degree controlled substance crime and sentenced to 13 months, stayed for two years.

## ISSUE

1. Did the district court err in denying King's motion to suppress the evidence found in his apartment based on the court's determination that the probable cause supporting the search warrant had not become unconstitutionally stale?

2. Did the police's forced entry five to ten seconds after they knocked on King's door and announced their presence constitute an unreasonable search in violation of the state and federal constitutions?

## ANALYSIS

In reviewing pretrial orders on motions to suppress evidence an appellate court may independently examine the facts and determine whether as a matter of law the district court's determination was erroneous. *State v. Stoskopf,* 644 N.W.2d 842, 844 (Minn.App.2002). But "when reviewing a district court's probable cause determination made in connection with the issuance of a search warrant, an appellate court should afford the district court's determination great deference." *State v. Rochefort,* 631 N.W.2d 802, 804 (Minn.

2001). Rather than considering the issue de novo, this court's task is to ensure that there was a "substantial basis for concluding that probable cause existed." *State v. Zanter*, 535 N.W.2d 624, 633 (Minn.1995) (quotation omitted). The district court's factual findings are reviewed for clear error. *State v. Horner*, 617 N.W.2d 789, 795 (Minn.2000).

■ 1. King argues the district court erred in not suppressing the evidence found during the search of his apartment because the information supporting probable cause for the search warrant was stale by the time the warrant was executed. The delay in executing a search warrant raises two issues: (1) did the delay violate statutes, and (2) did the delay cause the search to become unconstitutional? *State v. Yaritz*, 287 N.W.2d 13, 15 (Minn.1979). Minn.Stat. § 626.15(a) (2002) provides that, absent circumstances not present here, "a search warrant must be executed and returned to the court which issued it within ten days after its date." Here, it is uncontested the search warrant was executed within seven days of its issuance and therefore, there is no statutory violation.

■ A more difficult question, however, is whether the delayed execution constituted a constitutional violation. *Yaritz*, 287 N.W.2d at 16. "Whether a delay in executing a search warrant is unconstitutional depends on whether the probable cause recited in the affidavit still exists at the time of execution of the warrant—that is, whether it is still likely that the items sought will be found in the place to be searched." *Id.*

■ Courts have refused to set arbitrary time limits or to establish a rigid formula in making the determination of whether the probable cause underlying a search warrant has grown stale. *State v. Jannetta*, 355 N.W.2d 189, 193 (Minn.App.

1984). "Instead, the question must be determined by the circumstances of each case." *Id.* The "approach should be one of flexibility and common sense." *Id.* Relevant circumstances include the character of the crime, the character of the criminal, the character of the thing to be seized, and the character of the place to be searched. *Yaritz*, 287 N.W.2d at 16. The passage of time is less significant when an activity is of an ongoing, protracted nature. *State v. Souto*, 578 N.W.2d 744, 750 (Minn.1998).

The supreme court in *Yaritz* concluded a delay of six days in executing a warrant was reasonable:

> While it is true that a drug sale may be a single-occurrence crime, the affidavit ... indicate[d] that defendant was in the business of selling drugs and that he had been doing it on a continuing basis. Because of this, ... it is reasonable to conclude that the probable cause [that existed on the day the warrant was obtained] continued to exist [six days later] when the warrant was executed.

287 N.W.2d at 17.

Here, the criminal activity alleged in the affidavit is that King was selling drugs out of his apartment. The affidavit states the confidential reliable informant made a controlled purchase of crack cocaine from King's apartment and was given a phone number to contact King should he wish to make additional purchases. In addition, citizens and the building's owner had complained of activity suggesting a history of drug sales from King's apartment.

Viewing the components of the affidavit together, it shows that King was in the ongoing business of selling drugs from his apartment. *See State v. Wiley*, 366 N.W.2d 265, 268 (Minn.1985) (stating appellate courts "must be careful not to review each component of the affidavit in isolation. Even if each component is judged unsubstantial, the components viewed together

may reveal ... an internal coherence that [gives] weight to the whole." (alteration in original) (quotation omitted)). Further, Kasel testified that the day the warrant was executed the confidential reliable informant called King at the number with which he had been provided during the earlier controlled buy and confirmed King was in his apartment and willing to sell narcotics. It is reasonable to conclude that the probable cause that existed at the time the search warrant was issued continued to exist when the warrant was executed.

 2. King argues the evidence found in his apartment should have been suppressed because the manner in which the police entered his apartment constituted an unreasonable search in violation of his constitutional rights. The Fourth Amendment to the United States Constitution guarantees the people the right to be free from "unreasonable searches and seizures." The manner in which a search warrant is executed is part of the reasonableness inquiry. *United States v. Banks*, 540 U.S. 31, 124 S.Ct. 521, 524–25, 157 L.Ed.2d 343 (2003).

 The question when police forcibly enter a residence, after knocking and announcing their presence, is whether the amount of time the police waited before entering was reasonable. The same factors that are relevant in determining whether police officers' unannounced entry was reasonable apply to determining whether the police waited a reasonable amount of time, namely, whether under the facts known to the police officers, it "would be dangerous or futile, or ... would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.* at 525 (alteration in original) (quoting *Richards v. Wisc.*, 520 U.S. 385, 394, 117 S.Ct. 1416, 1421, 137 L.Ed.2d 615 (1997)).

 Whether exigent circumstances existed or it would have been futile to continue waiting is determined by examining the totality of the circumstances in a given case, but there are "factual considerations of unusual, albeit not dispositive, significance." *Banks*, 124 S.Ct. at 525. How much consideration should be given to any one factor will depend in part on whether the police chose to forcibly enter the residence because of futility or exigency. *See id.* at 527 (noting size of defendant's apartment, while not relevant to determining exigency, would be relevant to futility).

 Relevant factors may include the size of the residence to be searched, the time of the day, sounds heard by officers coming from inside the apartment, and the evidence sought. *See, e.g. id.* at 528 (stating "[p]olice seeking a stolen piano may be able to spend more time to make sure they really need the battering ram"); *United States v. Gillaum*, 372 F.3d 848, 855 (7th Cir.2004) (concluding "sound of footsteps coming from inside the apartment and not moving closer to the entry door" was sufficient for police officers to disregard knock and announce rule); *United States v. Spikes*, 158 F.3d 913, 927 (6th Cir.1998) (stating "amount of time officers need to wait before entering a home necessarily depends on how much time it would take for a person in the house to open the door"); *United States v. Bonner*, 874 F.2d 822, 823 (D.C.Cir.1989) (finding search reasonable where police served warrant during early evening hours, knew that persons were in small apartment, knocked and announced presence, and waited 10 seconds before entering).

Here, the police executed the warrant at 2 p.m. Smith testified that after knocking on the door he heard a male voice respond, "Who is it?" but heard no movement to-

wards the door after he stated, "Police, search warrant." The search warrant authorized the police to search for controlled substances and evidence of controlled substance sales. We conclude that under these circumstances it would be futile and possibly allow the destruction of evidence if the police continued to wait. The police officers' forced entry into King's apartment was not unreasonable.

King argues because the Supreme Court concluded in *Banks* that 15 to 20 seconds, while reasonable, was—in King's words— "a close call," waiting only 5 to 10 seconds must be unreasonable. While it is true that in *Banks* the Supreme Court noted its agreement with the dissent from the Ninth Circuit that "this call is a close one," 124 S.Ct. at 526, the Court also noted with approval several federal appellate court decisions that have found times less than 15 to 20 seconds to be reasonable, including *United States v. Markling*, 7 F.3d 1309, 1318–19 (7th Cir.1993), which held a seven-second wait was reasonable. *Banks*, 124 S.Ct. at 526 n. 5. It is clear the Supreme Court did not hold that waiting less than 15 to 20 seconds was per se unreasonable.

King also fails to address a key distinction between his case and the facts in *Banks*. In *Banks* there was no response from inside the apartment when the police knocked and announced their presence. *Id.* at 523. But here, police heard a male voice respond, "Who is it?" within 10 to 15 feet of the door and then heard nothing to indicate that anyone was moving towards the door. Therefore, unlike in *Banks,* the police here were dealing not only with the exigency that King might be destroying evidence but also with the fact that it would be futile for them to continue to wait. The Supreme Court in *Banks* noted that how long police officers must wait for a resident to open the door before it be-

comes futile "will vary with the size of the establishment, perhaps five seconds to open a motel room door, or several minutes to move through a townhouse." *Id.* at 527. But the Supreme Court noted Banks's argument that 15 to 20 seconds was too short of a time for him to get to the door, was "probably unrealistic on its own terms. The apartment was 'small' and a man may walk the length of today's small apartment in 15 seconds." *Id.*, n. 6.

## DECISION

The district court did not err in concluding there was adequate probable cause supporting the search warrant at the time it was executed and that the police officers' forced entry to execute the warrant was reasonable.

**Affirmed.**