*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2085**

State of Minnesota,
Respondent,

vs.

Vilaysack Sirimanothay,
Appellant.

**Filed November 23, 2015
Affirmed
Rodenberg, Judge**

Hennepin County District Court
File No. 27-CR-13-38680

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Rodenberg, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

On appeal from his convictions for being a prohibited person in possession of a firearm and fifth-degree controlled substance crime, appellant Vilaysack Sirimanothay

argues that the district court erred by (1) concluding that probable cause existed to issue a warrant authorizing search of his home, (2) admitting appellant's custodial statement that he gave before police advised him of his rights under *Miranda*, (3) allowing inadmissible hearsay testimony, and (4) misstating the law in instructing the jury concerning the definition of possession. We affirm.

## FACTS

On November 15, 2013, Officer Brian Grahme secured a warrant to search appellant's home. To secure the warrant, Officer Grahme submitted an affidavit to the issuing judge stating that a confidential, reliable informant (CRI) told him that an individual known to the CRI as "Sid" was selling marijuana and other illegal drugs from his house in South Minneapolis. The CRI also told Officer Grahme that "Sid" was a member of the Rolling 60's Crips street gang and had been in possession of a handgun within 30 days of the signing of the affidavit. Officer Grahme's research of the house address led him to believe that appellant was the individual described by the CRI. The CRI then confirmed that a photo of appellant shown him by Officer Grahme was of the individual he knew as "Sid." Less than 72 hours before securing the warrant, Officer Grahme met again with the CRI, who stated that he was in appellant's house and observed a large quantity of marijuana packaged for sale.

On November 21, 2013, Minneapolis police officers, assisted by the SWAT team, executed the search warrant. The SWAT team rammed the front door to enter and used a flash-bang diversionary device. Officer Matthew Kaminski testified that, upon entering the house, he and his partner went downstairs where they found appellant lying on the

floor in the hallway outside the southeast bedroom of the house, with his hands out. Two other men were in the house as well. The officers found S.Y. hiding in a bed in a room on the lower level of the house. The officers found V.S. on the upper level near the kitchen. The SWAT team placed flex-cuffs on each man. The flex-cuffs were later replaced with regular handcuffs.

After the SWAT team cleared the house, the investigators began searching for contraband. Officer Ricardo Muro testified that he searched the southeast bedroom, not knowing at the time whose bedroom it was. Officer Muro found a gun case containing a 9 mm handgun and two fully-loaded magazines. He also found a coffee canister containing marijuana and a digital scale in the sleeve of a jacket in the closet. Officer Muro found numerous photographs of appellant in the room, including on the wall, on top of the dresser, and in the dresser drawers. Additionally, he found a prescription bottle with appellant's name on it and seven prescriptions written for appellant.

Officer Muro testified that when he took the photographs and jacket upstairs, appellant asked Officer Muro, "What are you doing with my coat? Where are you taking my pictures?" He testified that he believed appellant was the sole occupant of the southeast bedroom based on his search of the room and the questions spontaneously asked by appellant.

Officer Grahme testified that he confirmed that appellant was the sole occupant of the southeast bedroom by asking appellant and the other two occupants of the house which rooms were theirs. Appellant's trial counsel raised a hearsay objection to Officer Grahme's testimony. The district court sustained the hearsay objection to the state's

3

questions "Which bedroom did [S.Y.] tell you was his?" and "Which bedroom did [V.S.] tell you was his?" The district court overruled appellant's hearsay objection to the state's question "And did either of the other two individuals [i.e. the occupants other than appellant] claim ownership of [the southeast bedroom]?" Officer Grahme testified that neither one claimed that room, and he further testified that he believed appellant was the occupant of the southeast bedroom based on its contents.

The state charged appellant with being a prohibited person in possession of a firearm in violation of Minn. Stat. §§ 624.713, subds. 1(2), 2(b) (2012) and 609.11 (2012), and fifth-degree controlled substance crime in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2012). At trial, appellant stipulated that he was ineligible to possess a firearm. The district court instructed the jury on actual and constructive possession for both counts. The jury found appellant guilty of both counts. The district court sentenced appellant to 60 months in prison on the firearm-possession count and 19 months in prison on the marijuana-possession count, to be served concurrently. This appeal followed.

**D E C I S I O N**

**I.    Probable cause for search warrant**

Appellant challenges the district court's denial of his motion to suppress the evidence obtained from the search of his house, arguing that the issuing judge lacked a substantial basis for concluding that probable cause existed to issue the warrant.

The United States and Minnesota Constitutions provide that no warrant shall issue without a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Generally, a search is lawful only if it is executed pursuant to a valid search warrant

4

issued by a neutral and detached magistrate after a finding of probable cause. *See* Minn. Stat. § 626.08 (2012); *State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014).

When reviewing whether there was probable cause to issue a warrant, we "afford the district court's determination great deference." *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001). We limit our review to considering whether the issuing judge had a substantial basis for determining that probable cause existed to support the warrant. *Yarbrough*, 841 N.W.2d at 623. Our substantial-basis determination is based on an examination of the totality of the circumstances. *State v. Holiday*, 749 N.W.2d 833, 839 (Minn. App. 2008).

> The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the judge], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). "Furthermore, the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants." *Wiley*, 366 N.W.2d at 268 (quotation omitted).

### A.    *Veracity of the CRI*

The search warrant in this case was supported by information that Officer Grahme obtained from the CRI. There are multiple ways in which an affidavit can show a CRI's veracity: (1) by showing that the informant has, in the past, provided police with accurate information; (2) "by showing that in the particular case the circumstances

5

strongly suggest that the information is reliable"; and (3) by showing corroboration of the details of the tip demonstrating that the informant "is telling the truth on this occasion." *State v. Siegfried*, 274 N.W.2d 113, 114-15 (Minn. 1978).

"[A]n informant who has given reliable information in the past is likely also currently reliable." *State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004). An affidavit sufficiently states that an informant has previously been reliable when it includes "a simple statement that the informant has been reliable in the past." *Id.* This is because the statement "indicates that the informant had provided accurate information to the police in the past and thus gives the magistrate reason to credit the informant's story." *Id.* (quotations omitted).

Officer Grahme stated that he had "worked with this CRI for a number of years on both state and federal cases." He also stated that the CRI's information had aided previous investigations, including leading police to the discovery of narcotics and firearms. These statements from Officer Grahme were sufficient to establish the CRI's veracity.

### B.      *Basis and staleness of CRI's knowledge*

Appellant argues that the affidavit failed to establish a sufficient temporal nexus between when the CRI observed appellant's marijuana possession and the issuance of the search warrant. "[T]he freshness of the [inculpatory] information . . . is an important factor for determining the probability that contraband or evidence of a crime will be found in a particular place," *State v. Carter*, 697 N.W.2d 199, 206 (Minn. 2005) (quotation omitted), because a search-warrant affidavit must include evidence of "facts so

closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time," *State v. Souto*, 578 N.W.2d 744, 750 (Minn. 1998) (quotation omitted). But we have noted:

> Courts have refused to set arbitrary time limits or to establish a rigid formula in making the determination of whether the probable cause underlying a search warrant has grown stale. Instead, the question must be determined by the circumstances of each case. The approach should be one of flexibility and common sense.

*State v. King*, 690 N.W.2d 397, 401 (Minn. App. 2005) (quotations and citations omitted), *review denied* (Minn. Mar. 29, 2005). One factor in whether there is a sufficient temporal nexus is whether there is "an indication of ongoing criminal activity." *State v. Ward*, 580 N.W.2d 67, 72 (Minn. App. 1998). In those situations, "the passage of time is less significant." *Souto*, 578 N.W.2d at 750. Courts considered the ongoing nature of drug dealing, which can extend the amount of time that information is useful for establishing probable cause. *See U.S. v. Carnahan*, 684 F.3d 732, 736 (8th Cir. 2012) (stating that "in investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant does not necessarily make the information stale" (quotation omitted)).

Here, the search warrant was based on the CRI's personal observations of marijuana packaging and sales in appellant's home. The affidavit lacks precision concerning when the CRI had been inside appellant's house "and observed a large quantity of marijuana that was packaged for sale." One reasonable reading of the affidavit is that Officer Grahme met with the CRI "[w]ithin the past 72 hours," but that

the CRI had not necessarily been to the house for some time. Another reasonable reading of the affidavit is that the CRI had been inside the house and then met Officer Grahme all "[w]ithin the past 72 hours."

Under the totality-of-the-circumstances, the facts reasonably support the issuing judge's implicit inference that: (1) the CRI had "recently" received information that appellant was selling marijuana from the house; (2) within 72 hours before the issuance of the warrant, appellant met with the CRI, who had personally observed appellant selling marijuana in his house; and (3) the CRI noted that there was a large quantity of marijuana that was packaged for sale, indicative of an ongoing drug-dealing enterprise. In all, these facts support the conclusion that the drug-related activity was ongoing, which extended the freshness of the information that the CRI provided to Officer Grahme.

As stated, we conduct a substantial-basis, deferential review of the issuing judge's flexible and common-sense decision. Using this approach and taking into account the preference accorded warrants, we conclude that the information on which the issuing judge based the search warrant was sufficiently fresh. The district court did not err in concluding that the information in the affidavit was not stale.

Appellant also argues that there was not a sufficient basis of knowledge about appellant's possession of a firearm, and that the affidavit "failed to establish a nexus between the residence and the firearm." The affidavit states that the CRI personally observed appellant selling marijuana from the house, but it lacks that same clarity concerning firearm possession. We conclude that appellant's arguments for suppression

because of the imprecision of the affidavit concerning the firearm are without merit for two reasons.

First, the gun was included in the search warrant primarily for the purpose of securing a no-knock, unannounced-entry search warrant. Under Minnesota law, "police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile." *Garza v. State*, 632 N.W.2d 633, 638 (Minn. 2001) (quotation omitted). To secure authorization for an unannounced entry, the affiant must present facts supporting such a reasonable suspicion to the issuing judge. *Id.* Officer Grahme included information that the CRI identified appellant as a gang member and said that appellant "ha[d] been seen in possession of a handgun within the past 30 days." Using a flexible and common-sense approach to reviewing the affidavit, the issuing judge would have viewed those facts as creating a reasonable suspicion that knocking-and-announcing would have been dangerous.

Second, and even beyond supporting the unannounced-entry request, the affidavit provided sufficient information to establish probable cause that the police would find contraband at appellant's house regardless of the reference to the firearm. The CRI's basis of knowledge and veracity concerning the marijuana was strong. Under the totality-of-the-circumstances analysis, that alone would have been sufficient to issue the search warrant. The information about the firearm was not necessary to the issuance of the warrant, the primary reason for which was to search for drugs.

The district court did not err in concluding that there was sufficient probable cause to support the issuance of the search warrant.

## II.    *Miranda* issues

Appellant next argues that the district court erred by admitting his statement, made before police read him the *Miranda* warning, that he occupied the southeast bedroom. He argues that he was in custody when police asked the three occupants which rooms were theirs. We review the district court's factual findings for clear error, and we independently review the district court's legal conclusions and the need for a *Miranda* warning. *State v. Scruggs*, 822 N.W.2d 631, 637 (Minn. 2012).

"On-the-scene questioning, where the officers are simply trying to get a preliminary explanation of a confusing situation, does not require a *Miranda* warning." *State v. Walsh*, 495 N.W.2d 602, 604-05 (Minn. 1993) (citations omitted). But once a person is in custody, the police must give a *Miranda* warning before questioning. *State v. Sterling*, 834 N.W.2d 162, 168 (Minn. 2014). Courts use a totality-of-the-circumstances analysis to determine whether the facts establish that a reasonable person in the same situation would have believed he was restrained to the degree associated with a formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S. Ct. 3138, 3151 (1984). "The test is not whether a reasonable person would believe he or she was not free to leave." *State v. Champion*, 533 N.W.2d 40, 43 (Minn. 1995). "[T]he only relevant inquiry is how a reasonable person in the suspect's position would have understood the situation." *Id.* (citing *Berkemer*, 468 U.S. at 442, 104 S. Ct. at 3151). Additionally, a warrant to search for contraband founded on probable cause "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705, 101 S. Ct. 2587, 2595 (1981).

### A.     *General on-the-scene questioning*

Appellant argues that this case is similar to *Walsh*, in which the Minnesota Supreme Court concluded that the defendant was in custody when police handcuffed the defendant to a stair railing after responding to a call about an assault, discovered the victim's dead body, and questioned the defendant without reading him the *Miranda* warning.  495 N.W. 2d at 603.  But *Walsh* also held that handcuffing, without more, did not mean a person was in custody.  *Id.* at 605.  *Walsh* is also distinguishable on its facts because the defendant in that case was the only person present in the house when the police arrived.  *Id.* at 603.  And the Minnesota Supreme Court held that the situation in *Walsh* only became custodial once the police discovered a dead body, restrained the defendant even more, and began questioning him more extensively.  *Id.* at 605.  At that point, the supreme court noted that the defendant would reasonably have assumed that he was under arrest.  *Id.*  The supreme court held that the questioning before that point was noncustodial.  *Id.*

Here, Officer Grahme's initial question about which room belonged to the appellant is general "on-the-scene questioning . . . to get a preliminary explanation of a confusing situation."  *Id.* at 604-05.  Unlike *Walsh*, there were three occupants in the house when the police executed the search warrant.  The other two occupants were restrained in like manner as appellant—first with flex-cuffs, then with regular handcuffs.  The police discovered only one of the occupants in a bedroom.  The other two occupants were in common spaces.  Officer Grahme asked appellant and the other occupants which rooms were theirs before Officer Muro discovered the firearm in the southeast bedroom.

11

These facts support the district court's conclusion that appellant was neither in custody, nor interrogated, and that instead, Officer Grahme's question was primarily an effort to sort out a confusing situation.

### B.    *Harmless error*

Even if appellant was in custody and interrogated, any error in the admission of his statement that the room was his was harmless.  The admission of a statement in violation of *Miranda* rights warrants a new trial unless the error is harmless beyond a reasonable doubt.  *Sterling*, 834 N.W.2d at 171 (citing *State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012) (quotation omitted)).  "An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error."  *Id.*  To determine whether a guilty verdict was surely unattributable to the error, we examine:  (1) the manner in which the evidence was presented, (2) whether it was highly persuasive, (3) whether it was used in closing argument, and (4) whether it was effectively countered by the defendant.  *Id.* (citing *State v. Al-Naseer*, 690 N.W.2d 744, 748 (Minn. 2005)).

Here, the other evidence of occupancy of the southeast bedroom—including the prescriptions, photographs, men's clothing, and appellant's questions to Officer Muro—was sufficient for the jury to conclude that appellant occupied the southeast bedroom.  Appellant's unprompted questions are, in our view, the most compelling evidence of appellant's occupancy of that bedroom.  Appellant does not dispute that he asked Officer Muro, "What are you doing with my coat?  Where are you taking my pictures?"  The jury doubtless viewed appellant's unprompted questions as an admission that the room Officer Muro searched was appellant's.  Along with appellant's possessions that the police found

12

in the southeast bedroom, these unprompted questions convince us that the jury's verdict was surely unattributable to admission of appellant's statement about occupancy of the southeast bedroom.

We conclude that appellant was neither in custody nor interrogated when Officer Grahme asked him which room was his, and that admission of his statement, even if deemed error, was harmless beyond a reasonable doubt.

## III. Hearsay

Appellant next argues that the district court erred by allowing Officer Grahme to present hearsay testimony that neither S.Y. nor V.S. claimed occupancy of the southeast bedroom. We will reverse a district court's evidentiary rulings only if it is demonstrated that the district court both abused its discretion and that prejudice resulted. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

Assuming for the sake of argument that the statements were inadmissible hearsay, we consider whether any error substantially influenced the jury's decision. *Hennepin Cty. v. Perry*, 561 N.W.2d 889, 893 (Minn. 1997). In making that determination, the strength of the evidence is one factor that we consider. *State v. Carlson*, 268 N.W.2d 553, 561 (Minn. 1978). We also consider whether the alleged error "went to the critical issue at trial." *State v. Litzau*, 650 N.W.2d 177, 184 (Minn. 2002).

Here, the statements went to a critical issue in the trial: whether appellant constructively possessed the contraband via his occupancy of the southeast bedroom. Appellant argues that "the state's case rested heavily on [the other two occupants'] out-of-court statements that the southeast bedroom did not belong to them." But

13

appellant's argument ignores that Officer Grahme's testimony about those statements was brief, and that in closing arguments, the state focused on the entirety of the circumstantial evidence: the photographs of appellant and his prescriptions in the southeast bedroom, his physical proximity to that room when police entered, and his unprompted questions to Officer Muro about his coat and pictures that the officer had seized from that room. As discussed, appellant's unprompted questions were strong indicators that appellant not only occupied the southeast bedroom where police found the contraband, but also owned the coat in which the marijuana was found. In light of this persuasive evidence that appellant occupied the southeast bedroom, Officer Grahme's brief hearsay testimony did not substantially influence the jury's verdict.

## IV.    Jury instructions

Appellant's final argument is that the district court materially misstated the law in instructing the jury on possession. We review a district court's jury instructions for abuse of discretion. *State v. Koppi*, 798 N.W.2d 358, 361 (Minn. 2011). A district court has "considerable latitude" in selecting the language for jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011). "An instruction is in error if it materially misstates the law." *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001) (citations omitted).

Appellant argues that the district court erred by departing from the standard jury instruction concerning possession found in 10A Minn. Dist. Judges Ass'n, *Minnesota Practice – Jury Instruction Guides, Criminal*, CRIMJIG 32.42 (5th ed.). But district courts are not required to use the model instructions. *State v. Smith*, 674 N.W.2d 398,

400 (Minn. 2004).  The issue is whether the district court's jury instructions materially misstated the law, and, if so, whether the error prejudiced appellant.

A person is guilty of illegal possession of a firearm if he is prohibited from possessing a firearm and is found in either actual or constructive possession of one. Minn. Stat. § 624.713, subd. 1 (2012); s*ee also State v. Salyers*, 858 N.W.2d 156, 159 (Minn. 2015) ("Possession of a firearm may be proved through actual or constructive possession.").  A person is guilty of illegal possession of marijuana if he is found to be unlawfully exercising either actual or constructive possession of marijuana.  Minn. Stat. § 152.025, subd. 2(a)(1).

The jury instruction in question on appeal, with the challenged portion italicized, reads:

> The law recognizes two kinds of possession:  actual possession and constructive possession. *A person is in actual possession of a thing if he has direct physical control over the thing at a given time*.  A person is in constructive possession of a thing if the thing was in a place under his exclusive control to which other people did not normally have access, or if found in a place to which others had access, he knowingly exercised dominion and control over it.  You may find that the element of possession, as that term is used in these instructions, is present if you find beyond a reasonable doubt that defendant had actual or constructive possession.

(emphasis added)

Appellant argues that the language "at a given time" in the actual possession portion of the instruction has the effect of removing the requirement that the state prove appellant physically possessed the contraband at the time of arrest.  Appellant argues that

15

the instruction allowed the jury to find him guilty for having had "physical control" over the contraband at *any* time, and that the actual-possession instruction confused the jury.

Appellant's arguments concerning this instruction ignore that this case involves only constructive possession. The state concedes that it produced no evidence of actual possession of the firearm or marijuana on November 21, 2013. At trial, neither party argued a theory of actual possession. Based on a thorough review of the record, it is clear to us that both parties viewed and presented this case as one of constructive possession only. The state told the jury in summation: "This is not an actual possession case, this is a constructive possession one . . . . [Constructive possession] arises when you don't have the things on you, but there is, nonetheless, evidence that you possessed it." Contrary to appellant's argument, the jury would not have been confused about the actual-possession instruction because neither party argued about actual possession. It is not clear to us why the actual-possession instruction was given at all. But under the theory and facts of the case, the most that can be said of the actual-possession instruction is that it likely was surplus.

Because the state's case relied exclusively on constructive possession, we consider whether the constructive-possession instruction was a material misstatement of the law. In *Salyers*, the Minnesota Supreme Court noted that "jury instructions regarding constructive possession are improper when they emphasize one factor to the exclusion of other relevant factors." 858 N.W.2d at 159. The supreme court also reiterated that the purpose of the constructive-possession doctrine:

16

is to include within the possession statute those cases where the state cannot prove actual or physical possession at the time of arrest but where the inference is strong that the defendant at one time physically possessed the [item] and did not abandon his possessory interest in the [item] but rather continued to exercise dominion and control over it up to the time of the arrest.

*Id.* The supreme court highlighted cases in which constructive-possession instructions were improper because they discounted various relevant factors that a jury should consider in finding that a defendant had constructive possession of an item, instead emphasizing a single factor. *Id.* (citing *State v. Olson*, 482 N.W.2d 212, 215 (Minn. 1992) (holding that an instruction was improper where it failed to present the various relevant factors for determining constructive possession in a balanced fashion)).

Here, appellant never challenged the constructive-possession instruction. And the district court gave a correct instruction. That instruction effectively paraphrased the purpose of the constructive-possession doctrine. The instruction did not emphasize any single factor that would permit the jury to find constructive possession. Most importantly, the evidence supports the jury's finding that appellant constructively possessed the marijuana and firearm. In sum, the unchallenged jury instruction on constructive possession was not a misstatement of the law, much less a material misstatement.

**Affirmed.**