*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-0060**

State of Minnesota,
Respondent,

vs.

Cassandra Lee Lundgren,
Appellant.

**Filed December 27, 2016**
**Affirmed**
**Worke, Judge**
**Concurring specially, Bratvold, Judge**
**Dissenting, Cleary, Chief Judge**

Scott County District Court
File No. 70-CR-14-16140

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Christian R. Peterson, Anoka, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Cleary, Chief Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant challenges her drug-possession conviction arguing that (1) the warrantless dog sniff outside of her apartment door was unconstitutional, (2) without

information from the dog sniff, the district court lacked probable cause to issue the search warrant, and (3) the information in the search warrant was stale. Because the dog sniff was constitutional and the information supporting the search warrant was not stale, we affirm.

**FACTS**

On August 25, 2014, an apartment manager informed an officer with the Shakopee Police Department that tenants in her building complained about drug use in six apartments. Officers conducted a dog sniff, in which the dog alerted to the presence of drugs in several apartments, including the apartment occupied by appellant Cassandra Lee Lundgren. One officer knew that an occupant of Lundgren's apartment had been arrested twice for methamphetamine possession and that Lundgren was a methamphetamine user. The officer had also previously responded to a call at the apartment building involving a woman who overdosed on heroin, and learned that the woman and Lundgren were friends and used drugs together.

On September 4 or 5, 2014, a certified drug-detecting dog performed a sniff for narcotics in a common interior hallway outside of Lundgren's apartment door. The dog indicated the presence of narcotics at the threshold of Lundgren's apartment. Based on this information, officers obtained a search warrant on September 5. The warrant was executed on September 11, and police found drug paraphernalia and methamphetamine in Lundgren's apartment. Lundgren was charged with fifth-degree drug possession, in violation of Minn. Stat. § 152.025, subd. 2(1) (2014).

Lundgren moved to suppress the drugs and dismiss the charge, arguing that the dog sniff outside of her apartment was unlawful, without the dog-sniff information the search

warrant lacked probable cause, and the information in the search warrant was stale at the time it was executed. After the district court denied Lundgren's motion, she stipulated to the state's case pursuant to Minn. R. Crim. P. 26.01, subd. 4, in order to preserve the dispositive pretrial issues for appeal. The district court found Lundgren guilty of fifth-degree drug possession and stayed adjudication under Minn. Stat. § 152.18, subd. 1 (2014). This appeal follows.

## D E C I S I O N

When the underlying facts are not in dispute appellate courts apply a de novo review to a district court's denial of a motion to suppress evidence. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).

### *Dog sniff*

Lundgren argues that the dog sniff outside of her apartment door was unconstitutional based on two theories. First, she argues that, under the property-rights analysis in *Florida v. Jardines*, police needed a warrant to conduct a dog sniff outside of her apartment door because that area was within the curtilage of her home. 133 S. Ct. 1409, 1417-18 (2013). Alternatively, she argues that under the privacy-rights analysis in Justice Kagan's concurring opinion in *Jardines*, the dog sniff outside of her apartment door permitted officers to obtain information that was inside her home, intruding on her reasonable expectation of privacy and constituting a search under the Fourth Amendment. 133 S. Ct. at 1418 (Kagan, J., concurring) (citing *Kyllo v. United States*, 533 U.S. 27, 121 S. Ct. 2038 (2001)).

*Property-rights analysis*

The Fourth Amendment prohibition against unreasonable searches and seizures extends to the curtilage of a home. *State v. Sorenson*, 441 N.W.2d 455, 458 (Minn. 1989). Curtilage has been defined "as the area to which extends the intimate activity associated with the sanctity of a [person's] home and the privacies of life." *Id.* (quotations omitted). The Minnesota Supreme Court has treated common or shared spaces in multi-family residences as outside the curtilage because those areas are not within the exclusive control of one tenant. *See State v. Milton*, 821 N.W.2d 789, 800 (Minn. 2012) (concluding that shared stairway of duplex was common area and not curtilage); *see also State v. Davis*, 732 N.W.2d 173, 179 (Minn. 2007) (concluding that defendant did not have an expectation of privacy in the common hallway of apartment building); *State v. Krech*, 403 N.W.2d 634, 637-38 (Minn. 1987) (concluding that defendant did not have a reasonable expectation of privacy in backyard of duplex).

Similarly, in *State v. Luhm*, this court recently considered whether the area immediately outside of a condominium door was within the curtilage and subject to Fourth Amendment protection. 880 N.W.2d 606, 618 (Minn. App. 2016). *Luhm* involved facts nearly identical to those in this case: after receiving a tip of drug possession, the police entered a secured multi-unit building with the consent of the property-management company, and used a drug-detection dog immediately outside of the door to Luhm's condominium unit. *Id*. at 609–10. We concluded that the area immediately outside of the door to Luhm's condominium unit was not curtilage because (1) the area was not a part of an enclosure around the area, (2) Luhm did not have exclusive use of the area, and (3) the

4

building rules stated that common hallways must be kept free and clear of personal property. *Id.* at 617 (citing *United States v. Dunn*, 480 U.S. 294, 301, 107 S. Ct. 1134, 1139 (1987)). Because the dog sniff was outside the curtilage, the Fourth Amendment did not apply, and we determined that only reasonable suspicion, under the state constitution, was required to justify the dog sniff. *Id.* at 618, 620.

Here, the district court found that Lundgren's apartment complex "is the type of complex where all apartment doors open into common interior hallways." Because the hallway is shared with other tenants, unlike the front porch of a single-family home in *Jardines*, the district court applied *Milton* and *Davis* and concluded that the dog sniff did not occur on the curtilage. This conclusion is consistent with *Luhm*.[1] Because the area outside Lundgren's door was not within the curtilage, the dog sniff did not require a warrant. We are bound to follow Minnesota Supreme Court precedent and the published opinions of this court; therefore, we reject Lundgren's first theory of relief. *See State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010).

*Privacy-rights analysis*

Lundgren argues that, even assuming that the dog sniff outside of her apartment was performed in an area that was not curtilage, the dog sniff nonetheless invaded her reasonable expectation of privacy inside of her home.[2] Lundgren relies on Justice Kagan's concurring opinion in *Jardines*, which relies on a privacy-rights theory in concluding that

---

[1] The district court did not have the benefit of *Luhm*, which was decided after the district court issued its order denying Lundgren's suppression motion.

[2] While the Minnesota Supreme Court addressed this question in *Davis*, it relied only on the Minnesota Constitution. 732 N.W.2d at 176 n.5.

a drug-detecting dog, like the thermal-imaging device in *Kyllo*, is a sense-enhancing device not available to the general public, which is used by police to explore details of the home that would otherwise not be discoverable. 133 S. Ct. at 1418-19 (citing 533 U.S. 27, 34, 121 S. Ct. 2038, 2043). Under the Court's "reasonable expectation of privacy" test, police use of sense-enhancing technology to obtain information regarding the interior of a person's home intrudes into a constitutionally protected area requiring a warrant. *Kyllo*, 533 U.S. at 34, 121 S. Ct. at 2043.

The Minnesota Supreme Court has rejected the reasonable-expectation-of-privacy analysis in determining whether a dog sniff in a common hallway outside of a residence constitutes a search inside a private residence. *See Davis*, 732 N.W.2d at 176, 178-80 (concluding that dog sniff outside of apartment door in common hallway is a search under the Minnesota Constitution, requiring reasonable suspicion). The supreme court distinguished *Kyllo* because the thermal-imaging unit in that case was "capable of detecting lawful as well as unlawful activity" inside the residence, whereas the dog was only "capable of detecting…the odor of illegal narcotics emanating from the inside of [the] residence." *Id.* at 179 (quotation omitted). Lundgren argues that *Davis* is inapposite. But as an error-correcting court, we do not reconsider or extend our supreme court rulings. *See Resendiz v. State*, 832 N.W.2d 860, 867 (Minn. App. 2013), *review denied* (Minn. Aug. 20, 2013).

In sum, Lundgren's challenges to the dog sniff under property- and privacy-rights theories fail. Because we determine that the dog sniff was lawful, we need not address

Lundgren's argument that without the information from the dog sniff the search warrant was issued without sufficient probable cause.

*Staleness*

Lundgren next argues that the information in the search warrant was stale by the time it was executed, and, therefore, police lacked probable cause.

A search warrant must be executed and returned to the court that issued it within ten days after its issuance. Minn. Stat. § 626.15(a) (2014). Whether a delay in executing a search warrant is unconstitutional depends on whether probable cause still exists at the time of execution of the warrant and whether it is still likely that the items sought will be found in the place to be searched. *State v. Yaritz,* 287 N.W.2d 13, 16 (Minn. 1979). "Relevant circumstances include [1] the character of the crime, [2] the character of the criminal, [3] the character of the thing to be seized, and [4] the character of the place to be searched. The passage of time is less significant when an activity is of an ongoing, protracted nature." *State v. King*, 690 N.W.2d 397, 401 (Minn. App. 2005) (citations omitted), *review denied* (Minn. Mar. 29, 2005).

Here, the warrant was signed on September 5 and executed six days later on September 11. Because only six days elapsed, Minn. Stat. § 626.15 was satisfied. Under the circumstances, the warrant was also not stale on a constitutional basis for lacking probable cause. One officer knew that Lundgren was a drug user and that there were reports of extensive drug use at her apartment. This information was corroborated by the dog alerting to the presence of drugs and the fact that one occupant had been arrested twice for drug possession. Further, the officers knew Lundgren had used drugs with a neighbor

who overdosed on heroin.  *See State v. Eling*, 355 N.W.2d 286, 290 (Minn. 1984) (recognizing that collective knowledge of entire police force may be used to establish probable cause).  These circumstances are relevant to demonstrating the ongoing, protracted nature of criminal activity at the apartment and establish a fair probability that drugs would still be present at the apartment six days after the dog sniff.  We conclude that probable cause still existed at the time of the search and the warrant was not stale.

**Affirmed.**

**BRATVOLD**, Judge (concurring specially)

Based on *Davis* and *Luhm*, I concur in the affirmance of the district court's decision denying Lundgren's motion to suppress. *State v. Davis* held that the Minnesota Constitution requires police to have a reasonable articulable suspicion to conduct a warrantless dog sniff in the common hallways outside an apartment door. 732 N.W.2d 173, 181 (Minn. 2007). More recently, this court held in *State v. Luhm* that the hallway immediately outside the door to a condominium unit is not within the curtilage and therefore is not subject to Fourth Amendment protection under the U.S. Constitution. 880 N.W.2d 606, 618 (Minn. App. 2016). Here, Lundgren did not challenge the reasonable articulable suspicion supporting the warrantless search by police, so the question is whether a warrant is required under either the U.S. or Minnesota Constitution.

I write separately to acknowledge the forceful concerns articulated in the dissenting opinion and to discuss gaps in our precedent. First, Minnesota appellate courts have not recently considered developments in the privacy-rights analysis. Because the appellant in *Luhm* presented only the property-rights analysis on appeal, this court did not consider the privacy analysis that was articulated in the *Jardines* concurrence and *Kyllo*. *Luhm*, 880 N.W.2d at 616 (noting that appellant relies on majority opinion in *Jardines* and "does not advance the theory on which the *Jardines* concurrence is based"); *see also id*. at 616 n.2 (stating it is unnecessary to analyze *Kyllo*). While *Davis* considered *Kyllo*, *Davis* distinguished a dog sniff from thermal imaging in a way that does not align with the view stated in the *Jardines* concurrence. While a concurrence is that and nothing more, the *Jardines* concurrence is grounded in *Kyllo*, which applied the privacy-rights analysis in

holding that police must obtain a warrant before using thermal imaging to detect drugs inside the unit of a triplex. *Florida v. Jardines*, 133 S. Ct. 1409, 1419 (2013) (Kagan, J., concurring) (citing *Kyllo v. United States*, 121 S. Ct. 2038, 533 U.S. 27, 40 (2001)).

Second, the Minnesota Supreme Court has not considered the curtilage issue for a police dog sniff of an apartment hallway or door. *Davis*, 732 N.W.2d at 179 n.10 ("[W]e express no opinion about what level of suspicion is required to walk a narcotics-detection dog in an area found to be within the curtilage. We also express no opinion about what standard would be required if a defendant met her burden of proving that she has a reasonable expectation of privacy in the apartment building hallway.") Nor does *Luhm* discuss the curtilage of an apartment under Minnesota law. Today's majority opinion correctly notes that Minnesota has held that many areas of an apartment complex are not within the curtilage. Our caselaw, however, has examined only areas remote from the apartment home, such as the shared stairway and backyard. Thus, the Minnesota Supreme Court may recognize that an apartment hallway, or the apartment door threshold, is within the curtilage of a home.

Because Minnesota has held that "[t]here is no question that a person has a legitimate expectation of privacy inside her or his residence," *Davis*, 732 N.W.2d at 178, I am concerned about these gaps in our application of U.S. Constitutional precedent and in our analysis of Minnesota Constitutional protections. As the dissent articulates, our decisions appear to allocate constitutional protections based on type of home. Because this allocation correlates with income, race, and ethnicity, I believe that prudence dictates, at the very least, that we examine and clarify Minnesota precedent on this important issue.

**CLEARY**, Chief Judge (dissenting)

I respectfully dissent. Under the Fourth Amendment, appellant's objectively reasonable expectation of privacy inside of her apartment was violated when police used a drug-sniffing dog as a sense-enhancing tool to detect information regarding the interior of her home. I would hold that under the Fourth Amendment the dog sniff was a search requiring a warrant.

While the majority in *Florida v. Jardines*, 133 S. Ct. 1409, 1417-18 (2013), used a property-rights analysis, Justice Kagan's concurrence gives guidance on how courts post-*Jardines* should analyze a challenge under the Fourth Amendment—like the challenge here—to the constitutionality of a dog sniff of a home's door under the *Katz* reasonable-expectation-of-privacy test. *See Jardines*, 133 S. Ct. at 1418-19 (Kagan, J., concurring). Under a Fourth Amendment privacy-rights analysis, appellant had a reasonable expectation of privacy within her home. *Payton v. New York*, 445 U.S. 573, 589-90, 100 S. Ct. 1371, 1381-82 (1980). Where police use sense-enhancing technology not in general public use to detect "*any information* regarding the interior of the home that could not otherwise have been obtained without physical intrusion into [the home]," a search occurs that is presumptively unreasonable without a warrant. *Kyllo v. United States*, 533 U.S. 27, 34, 40, 121 S. Ct. 2038, 2043, 2046 (2001) (emphasis added). "[D]rug-detection dogs are highly trained tools of law enforcement, geared to respond in distinctive ways to specific scents so as to convey clear and reliable information to their human partners." *Jardines*, 133 S. Ct. at 1418 (Kagan, J., concurring). As Justice Kagan put it, drug-detection dogs

"are to the poodle down the street as high-powered binoculars are to a piece of plain glass."

*Id*.

Here, the canine was a trained narcotics-detecting dog used by the police as a sense-enhancing device not generally used by the public. The dog sniffed appellant's door and acquired information (the presence of narcotics) that police would not have been able to obtain without physically intruding into appellant's apartment. Like the thermal-imaging device in *Kyllo*, the dog's sniff was a search requiring a warrant.

Recently, the Seventh Circuit Court of Appeals, relying on Justice Kagan's concurrence in *Jardines*, came to the same conclusion: the use of a drug-sniffing dog at a person's apartment door in a common hallway is an invasion of that person's reasonable privacy expectations requiring a warrant. *United States v. Whitaker*, 820 F.3d 849, 852-54 (7th Cir. 2016), *reh'g denied* (June 10, 2016). In *Whitaker*, the appeals court persuasively distinguished both *United States v. Place*, 462 U.S. 696, 709, 103 S. Ct. 2637, 2645 (1983) (holding a dog sniff of luggage in a public place is not a search under the Fourth Amendment), and *Illinois v. Caballes*, 543 U.S. 405, 408-09, 125 S. Ct. 834, 837-38 (2005) (holding a dog sniff of a lawfully stopped automobile is not a search), because the dog sniffs in those cases did not implicate the home and the privacy interest inherent in that setting—the Fourth Amendment's core concern. *Id*. at 853.

While appellant may have a lesser expectation of privacy outside her door in an apartment hallway than a homeowner does on a screened-in porch, I agree with the Seventh Circuit's analysis that a person's lack of a right to exclude others in an apartment hallway

does not mean that that person has "no right to expect certain norms of behavior in his apartment hallway." *Id*. The appeals court explained:

> Yes, other residents and their guests (and even their dogs) can pass through the hallway. They are not entitled, though, to set up chairs and have a party in the hallway right outside the door. Similarly, the fact that a police officer might lawfully walk by and hear loud voices from inside an apartment does not mean he could put a stethoscope to the door to listen to all that is happening inside. Applied to this case, this means that because other residents might bring their dogs through the hallway does not mean the police can park a sophisticated drug-sniffing dog outside an apartment door, at least without a warrant.

*Id*. at 853-54.

The Minnesota Supreme Court's conclusion in *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007), that a dog sniff of an apartment door in a common hallway only requires reasonable suspicion, is not applicable here. The supreme court noted that it was only deciding *Davis* under the Minnesota Constitution and not the Fourth Amendment. *Id*. at 176 n.5. The Minnesota Supreme Court may interpret the Minnesota Constitution to provide more protection than the U.S. Constitution, but it may not afford less. *State v. McBride*, 666 N.W.2d 351, 361 (Minn. 2003). In light of *Jardines*, 133 S. Ct. at 1418-19 (Kagan, J., concurring) and the Seventh Circuit's adoption of the reasoning in Justice Kagan's concurrence, the Minnesota Supreme Court's holding in *Davis*, 732 N.W.2d at 182, that a dog sniff of an apartment door in a common hallway only requires reasonable suspicion, falls below the federal constitutional floor.

In holding that a dog sniff of an apartment door is a "minimal" intrusion, the Minnesota Supreme Court relied on the Supreme Court's reasoning in *Place* that a dog

sniff is sui generis because it can only determine the presence or absence of narcotics, an illegal substance. *Davis*, 732 N.W.2d at 179-80. This reasoning presupposes, though, that drug-sniffing dogs are always, or even mostly, reliable and rarely have false positives. In *Florida v. Harris*, which was decided during the same term as *Jardines*, the drug-sniffing dog on two separate occasions alerted for the presence of narcotics that were not present. 133 S. Ct. 1050, 1054 (2013). A Chicago Tribune review of three years of police data revealed that only 44 percent of alerts from drug-sniffing dogs during traffic stops produced the discovery of drugs or paraphernalia. Dan Hinkel & Joe Mahr, *Tribune Analysis: Drug-sniffing Dogs in Traffic Stops Often Wrong*, Chicago Tribune (Jan. 6, 2011), http://articles.chicagotribune.com/2011-01-06/news/ct-met-canine-officers-20110105_1_ drug-sniffing-dogs-alex-rothacker-drug-dog. Another panel on the Seventh Circuit Court of Appeals expressed concern with the accuracy of drug-detection dogs in general where records revealed that the drug-sniffing dog in the case alerted to the presence of drugs 93 percent of the time while drugs were only found 59.5 percent of the time. *United States v. Bentley*, 795 F.3d 630, 635-36 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1233 (2016). Because drug-sniffing dogs' false positives may lead to the issuance of search warrants with the result that lawful and intimate details of the home are revealed when those search warrants are executed, a dog-sniff search is hardly sui generis. *See Caballes*, 543 U.S. at 411-12, 125 S. Ct. at 839-40 (Souter, J., dissenting) (describing the "legal fiction" of the "infallible dog"); *see also* George M. Dery III, *Who Let the Dogs Out? The Supreme Court Did in* Illinois v. Caballes *by Placing Absolute Faith in Canine Sniffs*, 58 Rutgers L. Rev. 377, 404 (2006) (explaining how poor accuracy of drug-sniffing dogs can develop during

training or through handler errors). For this reason, a dog sniff of a residence threatens privacy interests to a much higher degree than a dog sniff of a motor vehicle, where expectations of privacy are considerably lower.

It should be noted as well that the existence of two separate standards for a dog sniff, reasonable suspicion for apartments under the Minnesota Constitution versus probable cause and a warrant for single-family homes under the Fourth Amendment, apportion privacy rights to citizens inequitably based on their race, ethnicity, and income. *See Jardines*, 133 S. Ct. at 1413, 1416-18 (affirming the Florida Supreme Court, which held that the use of the drug-sniffing dog to investigate Jardine's home was a Fourth Amendment search unsupported by probable cause); *Davis*, 732 N.W.2d at 176, 182 (concluding that the Minnesota Constitution requires police to have a reasonable suspicion to conduct a dog sniff in the common hallway outside an apartment door). The court in *Whitaker* observed that, according to the Census's American Housing Survey for 2013, 67.8 percent of households composed solely of whites live in one-unit, detached houses, while for households solely composed of blacks, that number is 47.2 percent, and for Hispanic households, that number is 52.1 percent. *Whitaker*, 820 F.3d at 854. "The percentage of households that live in single-unit, detached houses consistently rises with income." *Id.* (explaining that 40.9 percent of households that earned less than $10,000 live in single-unit, detached houses, while 84 percent of households earning more than $120,000 did so). Using the same data in the Twin Cities metropolitan area, 67.6 percent of households composed solely of whites live in one-unit, detached houses, while 29.9 percent of black households and 42.2 percent of Hispanic households live in such houses.

U.S. Census Bureau, American Housing Survey, *Table Creator*, http://sasweb.ssd. census.gov/ahs/ahstablecreator.html (last visited Dec. 15, 2016). As for income, 34.9 percent of those in the Twin Cities metropolitan area earning less than $30,000 a year live in single-unit, detached houses, while 84.2 percent of those earning $80,000 or more a year live in such houses. *Id.*

Citizens living in apartments under the jurisdiction of the Seventh Circuit enjoy greater protections under the Fourth Amendment than Minnesota citizens do under their state constitution. The Minnesota Constitution should offer greater protection to residents of the state, never less than the protection provided by the Fourth Amendment to the U.S. Constitution.

To avoid the inevitable and inequitable result that comes from applying a watered-down constitutional standard for searching multi-unit housing, leaving minorities and persons who earn lower incomes to bear the brunt of warrantless dog-sniff searches of their residences, I would reverse and hold that the Fourth Amendment to the U.S. Constitution provides that a dog sniff of a person's apartment door is an invasion of that person's reasonable privacy expectations, requiring a warrant.